**No. 01-31026**

-------------------------------------

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**
-------------------------------------

**TRAVIS PACE,**

Plaintiff-Appellant

**VERSUS**

**BOGALUSA CITY SCHOOL BOARD, et al.,**

Defendants – Appellees

-------------------------------------
CIVIL APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
CIVIL ACTION NO. 99-CV-806-L
The Hon. Eldon E. Fallon, District Judge
-------------------------------------
**BRIEF ON BEHALF OF AMICI CURIAE
NATIONAL ASSOCIATION OF PROTECTION AND
ADVOCACY SYSTEMS, ADVOCACY CENTER, ADVOCACY,
INC., AMERICAN ASSOCIATION OF PEOPLE WITH
DISABILITIES, BAZELON CENTER FOR MENTAL HEALTH
LAW, AND SOUTHERN DISABILITY LAW CENTER
FOR REVERSAL
IN SUPPORT OF TRAVIS PACE AND THE UNITED STATES**
-------------------------------------

Ellen Hahn
ADVOCACY CENTER
515 S. College Road, Suite 130

Brian East
ADVOCACY, INC.
7800 Shoal Creek Blvd

Lafayette, LA  70503-3391                    Suite 171-E
                                             Austin, TX 78757

**Certificate of Interested Persons**
**Required by Local Rule 29.2**

The undersigned counsel of record certifies that the following

listed persons and entities described in the fourth sentence of Rule

28.2.1 have an interest in the outcome of this case.  These

representations are made in order that the judges of this Court may

evaluate possible disqualification or recusal.

**Amici curiae:**

**In support of plaintiff, Travis Pace and intervenor, the United States:**
National Association of Protection and Advocacy Systems
Advocacy Center
Advocacy, Inc.
American Association of People with Disabilities
Bazelon Center for Mental Health Law
Southern Disability Law Center

**In support of defendants:**
State of Texas

**Plaintiff:**
Travis Pace

**Intervenor:**
United States of America

**Defendants:**
Bogalusa City School Board
Louisiana State Board of Elementary and Secondary Education

Louisiana Department of Education
State of Louisiana


**Attorneys:**

**For amici curiae National Association of Protection and Advocacy Systems, Advocacy Center, Advocacy, Inc., American Association of People with Disabilities, Bazelon Center for Mental Health Law, and**
**Southern Disability Law Center**:
Nell Hahn
Brian East

**For amicus curiae State of Texas:**
Amy Warr

**For plaintiff, Travis Pace:**
Anne Arata Spell

**For defendant, Bogalusa City School Board:**
Ernest L. O'Bannon
John W. Waters
Christopher Mark G'Sell
Bienvenu, Foster, Ryan & O'Bannon

**For defendants Louisiana State Board of Elementary and Secondary Education, Louisiana Department of Education, and State of Louisiana:**
Charles K. Reasonover
Lamothe & Hamilton

**For intervenor, United States of America:**
Kevin K. Russell
Jessica Dunsay Silver
Tovah R. Calderon
United States Department of Justice, Civil Rights Division

_____

NELL HAHN

# Table of Contents

Certificate of Interested Persons…………………………………………... *i*

Table of Contents……………………………………………………… .. *iii*

Table of Authorities……………………………………………………... *iv*

Identity of Amici Curiae………………………………………………... *vii*

Summary of Argument…………………………………………………  1

Relevant Facts…………………………………………………………  3

Argument………………………………………………………………  6

      1.    A finding that FAPE has been provided is not
determinative of a student's claims of architectural
inaccessibility under the ADA and §504.  ……………………...  6

      2.    Administrative exhaustion requirements were
improperly held to bar some architectural access claims ……  12

      3.    The panel should not have affirmed summary
judgment on pace's damages claims, because the Bogulasa
City School Board may have been deliberately indifferent.  ...13

Conclusion………………………………………………………………. 16

Certificate of Service……………………………………………………  17

Certificate of Compliance……………………………………………… 19

# Table of Authorities

**Cases:**

*Angela L. v. Pasadena Indep. Sch. Dist.*, 918 F.2d 1188, 1193 n. 5 (5th Cir., 1990)…………………………………………………………... 7

*Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir. 2002), *cert. denied*, ___ U.S. ___, 123 S.Ct. 2639 (June 27, 2003)**……………………** 11

*Bartlett v. New York State Bd. of Law Examiners*, 156 F.3d 321, 331 (2d Cir. 1998), *vacated on other grounds*, 527 U.S. 1031 (1999)……. 14, 15

*Board of Educ. of Hendrick Hudson Central School Dist. v. Rowley*, 458 U.S. 176, 188-89 (1982).  ………………………………………………….. 7

*Coolbaugh v. State of Louisiana*, 136 F.3d 430 (5th Cir.), *cert. denied* 525 U.S. 819 (1998)…………………………………………………………... 3

*Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002)**………………………………………………………………..** 14, 15

*Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001)….. 14, 15

*Ferguson v. City of Phoenix*, 157 F.3d 668 (9th Cir. 1998)**……………….** 15

*Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60 (1992)**……………...** 14

*Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 115 (2d Cir. 2001)…………………………………………………. … 15

*Indep. Sch. Dist. No. 283 v. S.D.*, 88 F. 3d 556, 662 (8th Cir., 1996)…… 11

*Johnson v. City of Saline*, 151 F.3d 564, 573 (6th Cir. 1998)…………… 14

*Kinney v. Yerusalim*, 9 F.3d 1067 (3d Cir. 1993**……………………………..**

11

*Marvin H. v. Austin Independent School Dist.*, 714 F.2d 1348, 1357
(5th Cir. 1983)…………………………………………………………… 14

 *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir., 1984)…………… 11

*Moreno v. Consolidated Rail Corp.*, 99 F.3d 782, 789 (6th Cir. 1996)
(en banc)……………………………………………………………… .14

*Pace v. Bogalusa City School Board*, 2001 WL 969103, *4, (E.D.La.,
Aug 23, 2001)…………………………………………………………….. 5

*Pace v. Bogalusa City School Board*, 325 F.3d 609 (5th Cir, 2003),
*rehearing en banc granted*, --- F.3d ----, 2003 WL 21692677  (5th Cir.,
Jul 17, 2003)…………………………………………………………… 5,  9

*Padilla v. School District No. 1*, 233 F.3d 1268 (10th Cir., 2000)……….. 9

*Parker v. Universidad de Puerto Rico*, 225 F.3d 1 (1st Cir. 2000)**……….** 11

*Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1152-1153 (10th Cir.
1999)…………………………………………………………………… 14

*Rieckenbacker v. Foster*, 274 F.3d 974 (5th Cir. 2001)………………….. 15

*Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001**)…………………………...**

11

**Statutes**

20 U.S.C. §1400 *et seq*…………………………………………… passim

20 U.S.C. §1404(a)…………………………………………………… 12, 13

20 U.S.C. §1404(b)…………………………………………………… ..12

20 U.S.C. §1415(b)(6)…………………………………………….. 10, 13

20 U.S.C. §1415(l)……………………………………………….... 12

§504 of the Rehabilitation Act of 1973, 29 U.S.C. §794……..……passim

29 U.S.C. §794e…………………………………………………….. viii

42 USC § 10801 *et seq*. …………………………………………. viii


Title II of the Americans with Disabilities Act,
    42 U.S.C. §12031 *et seq*…………………………………..... passim

42 USC §15041 *et seq*………………………………………….. vii

## Regulations

28 C.F.R. §35.105…………………………………………….. 9

28 C.F.R. §35.130(b)(1)(ii)**………………………………………** 9

28 C.F.R. §35.133…………………………………………….. 9

28 C.F.R. §35.150…………………………………………….. 9

28 C.F.R. §35.151……………………………………………... 4, 9, 13

28 C.F.R. §35.163…………………………………………….. 9

34 C.F.R. §104.4(b)(1)(ii)**……………………………………..** 8

34 C.F.R. §104.6……………………………………………………………… 8

34 C.F.R. §104.22…………………………………………………………….. 8

34 C.F.R. §104.23(b)……………………………………………………….. 4

34 C.F.R. §104.33………………………………………………………….. 8, 9

34 C.F.R. §104.37…………………………………………………………….. 8

## Identity of Amici Curiae

The National Association of Protection and Advocacy Systems (NAPAS) is the membership organization for the nationwide system of protection and advocacy (P&A) agencies. Located in all 50 states, the District of Columbia, Puerto Rico, and the federal territories, P&A's are mandated under various federal statutes to provide legal representation and related advocacy services on behalf of all persons with disabilities in a variety of settings. The P&A system comprises the nation's largest provider of legally based advocacy services for persons with disabilities. NAPAS facilitates coordination of P&A activities and provides training and technical assistance to the P&A network. This case is of particular interest to NAPAS because it is important to preserve §1415(l) of the IDEA, 20 U.S.C. §1400 *et seq.*, which provides that families are not limited to raising claims under the IDEA, but can also raise non-redundant claims under §504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, and the ADA, 42 U.S.C. §12131 *et seq.*

The Advocacy Center is the agency designated by the Governor of Louisiana to protect and advocate for the rights of individuals with

disabilities in the State of Louisiana, pursuant to the Developmental

Disabilities Assistance and Bill of Rights Act of 2000, 42 USC §15041

*et seq.*, the Protection and Advocacy for Mentally Ill Individuals Act

of 1986, 42 USC § 10801 *et seq.*, and the Protection and Advocacy of

Individual Rights program, 29 U.S.C. §794e. As the P&A agency for

Louisiana, the Advocacy Center is interested in the enforcement of

civil rights laws that protect the rights of individuals with disabilities

to access services in the most integrated setting appropriate to their

needs.  This includes the right to access the programs of state and

local government, in accordance with the Americans with Disabilities

Act and §504 of the Rehabilitation Act of 1973, and the right to a free

appropriate public education, pursuant to the Individuals with

Disabilities Education Act.

Advocacy, Inc. is the agency designated by the Governor of

Texas to protect and advocate for the rights of individuals with

disabilities in the State of Texas, pursuant to the Developmental

Disabilities Assistance and Bill of Rights Act of 2000, 42 USC §15041

*et seq.*, the Protection and Advocacy for Mentally Ill Individuals Act

of 1986, 42 USC § 10801 *et seq.*, and the Protection and Advocacy of

Individual Rights program, 29 U.S.C. §794e. As the P&A agency for Texas, Advocacy, Inc. is interested in the enforcement of civil rights laws that protect the rights of individuals with disabilities to access services in the most integrated setting appropriate to their needs. This includes the right to access the programs of state and local government, in accordance with the Americans with Disabilities Act and §504 of the Rehabilitation Act of 1973, and the right to a free appropriate public education, pursuant to the Individuals with Disabilities Education Act.

The American Association of People with Disabilities (AAPD) is a national membership organization with more than 50,000 individual members throughout the United States. AAPD's mission is political and economic empowerment of children and adults with disabilities. Founded on the fifth anniversary of the Americans with Disabilities Act, AAPD has a strong interest in full enforcement and implementation of the ADA and other federal laws that protect the civil rights of disabled children and adults.

The Bazelon Center for Mental Health Law is a national public interest organization founded in 1972 to advocate for the rights of

individuals with mental disabilities.  The Bazelon Center has engaged in litigation, administrative advocacy, and public education to promote equal opportunities for individuals with mental disabilities.

The Southern Disability Law Center (SDLC) is a non-profit corporation founded to protect and advance the legal rights of people with disabilities throughout the South. The SDLC is not a part of any state or local government. The Center works in partnership with various P&A's and other disability advocacy groups to provide training and litigation assistance on issues relating to the ADA and IDEA, among others.

## Summary of Argument

This case involves the interplay between the requirements of §504 of the Rehabilitation Act of 1973, the Individuals with Disabilities Education Act (IDEA), and the Americans with Disabilities Act (ADA).

The §504 implementing regulations define discrimination to include various kinds of conduct, including the denial of a free and appropriate public education (FAPE), but also including other types of conduct such as, for example, intentional exclusion on the basis of disability; providing unequal aids, benefits or services; failure to make facilities accessible; and refusal to provide a reasonable accommodation.  Each of these forms of discrimination prohibited by §504 has its own legal test, and is independently prohibited: it is no defense to a claim of intentional exclusion (e.g., a rule prohibiting mentally retarded students from taking gym classes) that the facility meets physical accessibility requirements; similarly, it is no defense to a claim of physical inaccessibility (e.g., inaccessible bathrooms in newly constructed facilities) that the student was given a FAPE.

The IDEA was passed to incorporate and expand upon only one portion of §504's non-discrimination requirements--the requirement for FAPE.  The ADA, in turn, was passed to extend the §504 to all public entities.  And §504 continues to prohibit each of the several forms of discrimination in schools that accept federal funds.

As a result, the FAPE requirement in the IDEA overlaps with the §504 FAPE requirement, but not with its prohibitions against other forms of discrimination, including the §504/ADA physical accessibility requirements.

In this case, the trial court erred in holding that the finding that Pace was given FAPE justifies the grant of summary judgment against him on his non-FAPE claims under §504 and the ADA.

The panel also erroneously held that Pace was required to exhaust IDEA administrative procedures before he could sue over architectural barriers that failed to comply with the ADA.  IDEA administrative remedies do not address such claims, so there is no exhaustion requirement.

The panel, in a footnote, held that Pace's damages claims must fail because there is no evidence in the record that the defendants

intentionally discriminated against Pace.  However, neither the

standard for establishing intentional discrimination in the context of

a claim for architectural inaccessibility, nor the evidence on this

point, was discussed below, and the district court did not grant

summary judgment on this point.  The case should be remanded for a

determination of whether Bogalusa City School Board failed to

comply with the requirements of the ADA and 504 concerning

architectural accessibility, and, if so, if that failure constituted

"deliberate indifference" to Pace's rights.

Pace also argues that the State of Louisiana validly waived its

sovereign immunity. *Amici* agree with this contention and with the

position of the United States in this regard. They would observe that

the panel's holding that Louisiana "could not know" that it retained

sovereign immunity despite the passage of the ADA is peculiar, since

Louisiana has apparently contended since it filed its brief in

*Coolbaugh v. State of Louisiana*, 136 F.3d 430 (5th Cir.), *cert. denied*, 525

U.S. 819 (1998) in 1996, that the ADA did not validly abrogate its

Eleventh Amendment immunity.  However, in this brief we limit our

argument to correcting that portion of the panel's opinion that

suggests that the provision of FAPE under IDEA precludes a claim under the ADA and §504 based on architectural barriers.

## Relevant Facts

Travis Pace requested an IDEA due process hearing, alleging in part that there were architectural barriers preventing his use of various facilities at his school, including the restrooms, elevator, parking lot, and other areas of the campus.  The hearing officer found for the district, holding that "there was no evidence that Travis Pace lost any educational opportunity or was denied a free appropriate public education" because of any inaccessibility of the school facilities. (R.E. 7, pp. 20-26).  On appeal, the State Review Panel upheld the Hearing Officer's decision because it found that Pace had not been denied a FAPE, as defined in the IDEA, by any architectural barriers at the high school. (R.E. 6, pp. 6-7).

Pace appealed the IDEA decision to federal district court, and, in addition, brought claims under Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 ("ADA"), and under §504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("§504").  These included claims that alterations made in school facilities after the request for

4

the due process hearing did not comply with ADA and §504 architectural accessibility standards, 28 C.F.R. §35.151 and 34 C.F.R. §104.23(b), and claims regarding inaccessibility of facilities such as the auditorium stage, auditorium bathroom, health center, field house, and telephones—which are unlikely to have had a direct impact on whether or not Pace received FAPE. He also sought damages for physical and emotional injuries he suffered as a result of the inaccessibility of school facilities. (R. Vol. 1 at 201-208).

The district court upheld the decision of the State Level Review Panel, finding that under the IDEA, Pace had received meaningful educational benefits from the individualized educational program provided by the defendants. In a separate opinion, it granted summary judgment on Pace's ADA and §504 claims, holding that because it had found that Travis received meaningful educational benefit from a free and appropriate educational program," it could not "concomitantly find that the defendants refused to provide reasonable accommodations according to the same set of facts." *Pace v. Bogalusa City School Board*, 2001 WL 969103, *4, (E.D.La., Aug 23, 2001).

In affirming the district court's grant of summary judgment, the Fifth Circuit panel, like the district court, erred in failing to evaluate those claims under the ADA and §504.  Instead, the panel simply cited the finding that Pace was provided with FAPE as determinative of the issue of whether the defendants complied with the ADA and §504.  *Pace v. Bogalusa City School Board*, 325 F.3d 609 (5th Cir) *rehearing en banc granted*, --- F.3d ----, 2003 WL 21692677  (5th Cir., Jul 17, 2003).  Specifically, the panel stated:

> We therefore conclude that because Pace has been given thorough access to Bogalusa High School for purposes of complying with the IDEA's FAPE requirement, he has not been injured for purposes of asserting technical violations of the ADA regarding the architectural features of the facilities. . . . Because Pace, with the assistance and accommodations provided by the defendants, received meaningful benefits from a FAPE, we cannot conclude that the BCSB refused to provide reasonable accommodations to Pace in violation of the ADA and § 504.

> *Id*. at 622-623.

## Argument

**1.     A finding that FAPE has been provided is not determinative of a student's claims of architectural inaccessibility under the ADA and §504**.

The hearing officer, the State Review Panel, the district court, and the Fifth Circuit panel all improperly confounded the showing

necessary to establish a violation of the IDEA with that necessary to

show a violation of the ADA and §504.  The courts acknowledged the

fact that Congress has amended the IDEA to explicitly preserve all of

students' substantive rights under the ADA and §504, 20 U.S.C.

§1415(l) ("Nothing in this title shall be construed to restrict or limit

the rights, procedures, and remedies available under … the

Americans with Disabilities Act of 1990, title V of the Rehabilitation

Act of 1973, or other federal laws protecting the rights of children

with disabilities…").  However, the district court's grant of summary

judgment to the school district, which the panel affirmed, was based

on findings (by the hearing officer and by the State Review Panel)

that were solely concerned with whether architectural barriers caused

Pace to miss classes or otherwise denied him FAPE.  The case should

be remanded to the district court for a determination as to whether

the summary judgment evidence established that the school district

had complied with the specific requirements that the ADA and 504,

but not the IDEA, impose on the district.

As this Court has acknowledged, the IDEA imposes different

substantive requirements from those imposed by the ADA and 504.

*Angela L. v. Pasadena Indep. Sch. Dist.*, 918 F.2d 1188, 1193 n. 3 (5th Cir.,

1990).  Although the IDEA has detailed procedural requirements for

addressing educational concerns, its substantive requirements center

on the provision of FAPE.  FAPE "need not be the best possible

[education], nor one that will maximize the child's educational

potential; rather it need only be an education that is specifically

designed to meet the child's unique needs, supported by services that

will permit him to benefit from the instruction." *Board of Educ. of*

*Hendrick Hudson Central School Dist. v. Rowley*, 458 U.S. 176, 188-89

(1982).

     In contrast, the ADA and §504 requirements concerning

accessibility of schools and school services are much broader than

those of the IDEA - they cover a broader range of activities and

services, including access to ancillary services and activities such as

health services, sports activities, theater and other activities occurring

in the auditorium, and other activities.

     Only one of the applicable §504 regulations, 34 C.F.R. §104.33,

requires the provision of FAPE.  As the panel correctly observed, to

the extent that Pace alleged that the school violated §504 by denying

him FAPE, the district court's rejection of his IDEA claims necessarily

decided the §504 FAPE claim as well, since both claims required the

application of the same legal standard to the same facts.

However, there are numerous other §504 regulations besides

the one requiring FAPE, and those must be analyzed separately.  For

example, the regulations prohibit a school from affording an unequal

opportunity to participate in or benefit from an aid, benefit, or service

of the school.  34 C.F.R. §104.4(b)(1)(ii).  *See also* 34 C.F.R. §§104.6

(self-evaluation), 104.22 (methods of compliance, completion of

transition plan, and structural improvements in existing facilities),

and 104.37 (non-discrimination in non-academic programs such as

counseling services, physical education, recreational athletics,

transportation, health services, recreational activities, and special

interest groups or clubs).  Likewise, the ADA Title II regulations

contain numerous non-FAPE provisions, and in fact do not even

mention FAPE.  They, too, prohibit unequal treatment, 28 C.F.R.

§35.130(b)(1)(ii), among other things, e.g., 28 C.F.R. §§35.105

(completion of self-evaluation), 35.133 (maintenance of accessible

features), 35.150 (methods of compliance, completion of transition

plan, and structural improvements in existing facilities), 35.151 (new

construction and alterations), and 35.163 (provision of information

and signage).  These additional regulations address with particularity

issues related to the accessibility of facilities, and they would

obviously be unnecessary if the requirements of §504 were limited to

compliance with a single §504 regulation, 34 C.F.R. §104.33.

Pace complains of many aspects of his school experience that

are not directly related to quality of the education he received.  For

example, Pace's past "problems with the bathroom facilities,"

identified by the State Review Board, are alleged to have caused him

physical and emotional injuries. Even though this may not have

interfered with Pace's education sufficiently to deny him FAPE, Pace

should have been given an opportunity to demonstrate the nature

and extent of his injuries, and to obtain corrective action and/or

damages under the ADA and 504.[1]  *C.f. Padilla v. School District No. 1*,

---

[1] The panel asserted that Pace's claims for injunctive relief are moot because he is no longer a student at Bogalusa High School, and that his damages claims fail because there is no evidence of intentional discrimination.  *Pace*, 325 F.3d at 622, n. 20.  However, as he contends in his brief at 23-25, Pace still visits the school for public events, and thus may still have standing to raise claims for injunctive relief.  This issue was not one of the grounds for summary judgment below, and should not have been decided in the first instance by the panel.  Further, as will

233 F.3d 1268 (10th Cir. 2000) (ADA remedies available to redress physical, non-educational injuries; exhaustion of IDEA remedies not required).

Further, not all of the areas of inaccessibility Pace complained about related directly to his educational program. The IDEA complaint procedure, 20 U.S.C. §1415(b)(6), only applies to matters "relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education ..." In addition to classrooms and directly related services, Pace complained of lack of access to non-academic facilities such as the auditorium stage, auditorium bathroom, health center, field house, and telephones. Inaccessibility of these facilities to a high school student, while perhaps not constituting an impediment to educational progress, is nevertheless a violation of the ADA and §504, and is actionable.

---

be discussed *infra*, Pace may well have produced evidence sufficient to withstand summary judgment on the issue of intentional discrimination. Again, this is an issue that was not discussed below, and that should not have been summarily decided by the panel, without benefit of briefing specifically addressed to this point.

If FAPE is all that is required by these statutes, then a high school student with paraplegia who wants to attend the senior prom, or a basketball game, has no ability to enforce his right to equal access. A public school student would also have less rights than all other persons with disabilities, who clearly have the right to seek redress against public entities in order to remedy architectural barriers. *See, e.g., Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir. 2002) (Title II case regarding architectural barriers on city sidewalks), *cert. denied*, ___ U.S. ___, 123 S.Ct. 2639 (June 27, 2003); *Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001) (person with a disability states a claim under Title II for architectural barriers at courthouse); *Parker v. Universidad de Puerto Rico*, 225 F.3d 1 (1st Cir. 2000) (Title II claim for damages flowing from architectural barriers at public university); *Kinney v. Yerusalim*, 9 F.3d 1067 (3d Cir. 1993) (architectural barriers on city streets and sidewalks).

This is not a case in which all of Pace's ADA and §504 claims are identical to his IDEA claims. In such cases, courts have correctly reasoned that a decision in the student's favor in the IDEA claims disposes of his ADA and 504 claims. *See, e.g., Indep. Sch. Dist. No. 283*

*v. S.D.*, 88 F. 3d 556, 562 (8th Cir. 1996). Nor is it a case in which Pace sought damages under §504 for conduct that was actionable only because it violated procedural requirements of the IDEA, *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir., 1984). If Congress's explicit guarantee that the IDEA will not serve to limit students' rights under the ADA and §504 is to have any meaning, students like Pace must have the right to redress violations of these statutes that do not amount to a denial of FAPE. The denial of a free appropriate public education is not the only legally cognizable injury that can result from a violation of statutory rights under the ADA and §504.

**2.     Administrative exhaustion requirements were improperly held to bar some architectural access claims.**

In footnote 20, the panel held that some of Pace's ADA claims—specifically those that related to non-ADA-compliant alterations to existing facilities--were not ruled on below, but were nevertheless barred because Pace had not exhausted his administrative remedies with respect to those claims. However, these claims are not covered by the IDEA, so exhaustion is not required.

IDEA administrative exhaustion is required of claims brought under other statutes, such as the ADA, if those claims seek remedies

that are also available under the IDEA, 20 U.S.C. §1415(l).  The panel

cited 20 U.S.C. §1404(b) for the proposition that relief for claims of

improper alterations to existing facilities is available under the IDEA.

However, that provision only applies to facilities built or altered with

IDEA funding with the permission of the Secretary of Education, 20

U.S.C. §1404(a).  There is no indication that any of the alterations at

Bogalusa High School were paid for with such funds.  Even if there

had been, Pace could not have obtained a remedy for the violations

through the IDEA complaint procedure unless the violations

amounted to a denial of FAPE.  The IDEA complaint procedure, 20

U.S.C. §1415(b)(6), only applies to matters "relating to the

identification, evaluation, or educational  placement of the child, or

the provision of a free appropriate public education ..."

Because the IDEA did not in fact require the alterations in

Bogalusa High School facilities to comply with ADA or §504

standards, 28 C.RF.R. §35.151, or provide a remedy for the failure to

meet those standards, Pace did not have to exhaust administrative

remedies with regard to those claims.  They were not raised or acted

upon below.  Summary judgment for the District on these claims was error.

**3.    The panel should not have affirmed summary judgment on pace's damages claims, because the Bogalusa City School Board may have been deliberately indifferent.**

The panel, in a footnote, held that Pace's damages claims must fail because there is no evidence in the record that the defendants intentionally discriminated against Pace.  However, neither the standard for establishing intentional discrimination in the context of a claim for architectural inaccessibility, nor the evidence on this point, was discussed below, and the district court did not grant summary judgment on this point.  The case should be remanded for a determination of whether Bogalusa City School Board failed to comply with the requirements of the ADA and §504 concerning architectural accessibility, and, if so, if that failure constituted "deliberate indifference" to Pace's rights.

Since *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60 (1992), this Court, like all other circuit courts to address the issue,[2] has

---

[2] *See, e.g., Johnson v. City of Saline*, 151 F.3d 564, 573 (6th Cir. 1998); *Moreno v. Consolidated Rail Corp.*, 99 F.3d 782, 789 (6th Cir. 1996) (en banc) (every circuit that has reached the issue after *Franklin* has held that compensatory damages are

affirmed the availability of damages under ADA Title II and §504, although stating that intent is required in order to recover damages under these statutes. *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002).

The circuits to decide the issue so far have held that "intentional" in this context means deliberate indifference to a federally protected right. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001); *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1152-1153 (10th Cir. 1999); *Bartlett v. New York State Bd. of Law Examiners*, 156 F.3d 321, 331 (2d Cir. 1998), *vacated on other grounds*, 527 U.S. 1031 (1999).[3]  This Court has not yet clearly decided this issue, although its most recent decision appears consistent. *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 575-576 (5th Cir. 2002).

---

available under § 504).  Although this Court's earlier precedent suggested that money damages are unavailable under §504, *Marvin H. v. Austin Independent School Dist.*, 714 F.2d 1348, 1357 (5th Cir. 1983) (noting confused state of Supreme Court precedent at the time), that was implicitly overruled by *Franklin*.

[3] In contrast to this Court's analysis in *Rieckenbacker v. Foster*, 274 F.3d 974 (5th Cir. 2001), the Second Circuit has held that states have no immunity from ADA claims for money damages so long as discriminatory animus is shown.  *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 115 (2d Cir. 2001). Otherwise, deliberate indifference is all that is required.  *Id.*

Deliberate indifference may be shown by proof of knowledge of the federal obligation, and the deliberate failure to remedy it.[4] The panel's summary finding that "there is no evidence in the record that defendants intentionally discriminated" against Pace is unsupported. The fact that accommodations were offered is insufficient to negate intent under the deliberate indifference standard. If the defendants were aware of their duty to make non-educational facilities such as bathrooms, the auditorium stage, auditorium bathroom, health center, field house, and telephones, accessible to Pace; or if they were aware of their obligation to comply with ADA and §504 accessibility guidelines in making modifications, and they failed to do so—they may have been deliberately indifferent to his rights under the ADA and §504, even if they held no malice toward Pace and in fact afforded him FAPE.

## Conclusion

---

[4] *Compare Duvall, supra*, at 260 F.3d at 1138-1139 (sufficient evidence of deliberate indifference because the defendant had notice of the plaintiff's need, yet "they failed despite repeated requests to take the necessary action."); *Ferguson v. City of Phoenix*, 157 F.3d 668 (9th Cir. 1998) (finding insufficient evidence of deliberate indifference, in part because of lack of notice to defendant, and in part due to its diligent efforts to remedy problems once it was notified); *Bartlett, supra* (using unreliable test to deny accommodations was sufficient evidence).

Amici therefore urge this Court to vacate the panel decision, reverse the decision of the district court granting summary judgment, and remand to the district court for further proceedings.

Respectfully submitted,

_____

NELL HAHN
Advocacy Center
515 S. College Road, Suite 130
Lafayette, LA 70503
Telephone:  (337) 237-7380, Ext. 11
Fax:  (337) 237-0486

BRIAN EAST
ADVOCACY, INC.
7800 Shoal Creek Blvd., Suite 171-E
Austin, TX 78757

Telephone:  (512) 454-4816
Fax:  (512) 454-3999

Attorneys for Amici Curiae

_____

Certificate of Service

I certify that two copies of the foregoing Brief of Amici Curiae have been served upon the following counsel of record, by forwarding two copies of same to each office, in both paper and in electronic form on diskette, by dispatching them to Federal Express, for next day delivery, this 19th day of August, 2003, to:

Anne Arata Spell
Spell & Spell
943 Ellis Street
Franklinton, LA 70438

Ernest L O'Bannon
Bienvenu, Foster, Ryan & O'Bannon
1010 Common Street, Suite 2200
New Orleans, LA 70130

Charles K Reasonover
Lamothe & Hamilton
601 Poydras Street, Suite 2750
Pan American Life Center
New Orleans, LA 70130

Kevin K Russell
US Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-0001

Amy Warr
Office of the Attorney General
  for the State of Texas
300 W 15th Street, 10th Floor

William P Clements Building
Austin, TX 78701

I further certify that twenty copies of this Brief of Amici Curiae,

along with an electronic copy as required by Local Rule 31.1, was

dispatched to Federal Express, on this 19th day of August, 2003, for

next day delivery to:

Office of the Clerk
U.S. Court of Appeals, Fifth Circuit
600 Camp Street
New Orleans, LA 70130


_____
Nell Hahn

Certificate of Compliance

1. This brief complies with the type-volume limitation of FED.R.APP.P. 32(a)(7)(B) because this brief contains 3111 words, excluding the parts of the brief exempted by FED.R.APP.P. 32(a)(7)(B)(iii), as calculated using Microsoft Word, the word processing program used to prepare the brief.

2. This brief complies with the typeface requirements of FED.R.APP.P. 32(a)(5) and the type style requirements of FED.R.APP.P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 98 in 14 point Palatino type (with 12 point footnotes).


_____          _____

Nell Hahn                                Date
Attorney for Amici